UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KAID C. MUSGRAVE, et al.,

       Plaintiffs,                    Case No. 2:09-cv-01029
                                            JUDGE GREGORY L. FROST
    v.                                       Magistrate Judge Mark R. Abel

BREG, INC. AND LMA,
NORTH AMERICA, Inc., et al.,

       Defendants.

### OPINION AND ORDER

This matter is before the Court on Defendant[1] Breg, Inc.'s Motion for Reconsideration as to Two Aspects of the Court's September 2, 2011 Summary Judgment Decision (ECF No. 165), Plaintiffs' Memorandum in Opposition to Defendant Breg, Inc.'s Motion for Reconsideration (ECF No. 176), and Defendant Breg, Inc.'s Reply Memorandum in Support of its Motion for Reconsideration as to Two Aspects of the Court's September 2, 2011 Summary Judgment Decision (ECF No. 181). For the reasons that follow, the Court **GRANTS** Breg's motion.

### I.  Background

This Court issued an Opinion and Order in which it denied Plaintiffs' Motion for Partial Summary Judgment (ECF No. 109) and granted Defendant's Motion for Summary Judgment as it related to Plaintiffs' common law breach of implied and/or express warranty claims and denied the remainder of Defendant's motion (ECF No. 103). Breg has filed a motion for reconsideration of two discrete portions of that Opinion and Order. Breg's motion is ripe for

---

[1] On August 31, 2010, the parties stipulated to the dismissal of LMA North America, Inc., leaving Breg, Inc. as the only defendant in this action. (ECF No. 94.)

review.

The Court notes that it has been informed by the parties that this case has settled.  The Court, however, is inclined to issue this Opinion and Order so to correct its previous error.

## II.  Standard

Although the Federal Rules of Civil Procedure do not explicitly address motions for reconsideration of interlocutory orders, the authority for a district court to hear such motions is found in both the common law and in Rule 54(b) of the Federal Rules of Civil Procedure. *Rodriguez v. Tenn. Laborers Health & Welfare Fund,* 89 Fed. Appx. 949, 959 (6th Cir.  2004). "[D]istrict courts possess the authority and discretion to reconsider and modify interlocutory judgments any time before final judgment."  *Id.* at 652 (citing as examples *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 12 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge");  *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) ("District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment.")).  Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or, (3) a need to correct a clear error or prevent manifest injustice.  *Id.* at 959(citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)).

## III.  Discussion

In Breg's motion, it seeks reconsideration (1) to address a portion of the summary judgment decision that calls into question the applicable law as it relates to Plaintiffs' claims for non-economic damages under the Ohio Products Liability Act, and (2) to correct a misstatement

2

about a Food and Drug Administration 510(k) application document that the Court indicated belonged to Breg, Inc.

## A. Non-Economic Damages Under the Ohio Products Liability Act

### 1. Request for Reconsideration

In its Opinion and Order on summary judgment, this Court stated:

Defendant argues that, if Plaintiffs' claims survive summary judgment, Plaintiffs' non-economic damages should be capped pursuant to the Ohio Revised Code § 2315.18(B)(2). That statutory provision limits non-economic damages in tort actions to the greater of $250,000 or three times the economic loss to a maximum of $350,000 per plaintiff or $500,000 for each occurrence that is the basis of the tort action. The statute provides for exceptions to the cap for certain types of injuries:

> [(B)(3)] There shall not be any limitation on the amount of compensatory damages that represents damages for noneconomic loss that is recoverable in a tort action to recover damages for injury or loss to person or property if the noneconomic losses of the plaintiff are for either of the following:
>
> (a) Permanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system;
>
> (b) Permanent physical functional injury that permanently prevents the injured person from being able to independently care for self and perform life-sustaining activities.

(ECF No. 152 at 18) (citing Ohio Rev. Code § 2315.18(B)(3)(a), (b)).

In their summary judgment briefing, Plaintiffs argued that under the statute, the cap on non-economic damages should be lifted because Plaintiff Kaid Musgrave had suffered a catastrophic injury resulting in permanent physical deformity and/or loss of the use of a limb as reflected in § 2315.18(B)(3)(a).

The Court, however, found the date the statute took effect to be determinative:

That is, Ohio Revised Code § 2315.18 became effective on April 7, 2005. That date is after Musgrave's surgery but before the date Plaintiffs filed the instant action.

3

> Thus, the provision does not apply to Plaintiffs here unless it is applied retroactively to the date of the injury or the relevant date for determining whether the statute applies is the date a plaintiff files a lawsuit based on the injury.

*Id.* at 19. The Court then went on to explain:

> The Northern District of Ohio recently dealt with a case directly on point. In *Heffelfinger v. Connolly*, No. 3:06-CV-2823, 2009 U.S. Dist. LEXIS 6441 (N.D. Ohio Jan. 15, 2009), the court addressed a situation where the plaintiff's injury occurred before the effective date of Ohio Revised Code § 2315.18 and the plaintiff filed suit after the effective date of the statute. The court started its discussion with an analysis of whether the statute applied retroactively.

*Id.* The Court then adopted the *Heffelfinger* court's analysis and its conclusion that § 2315.18 did not apply retroactively.

Next the Court, again following the *Heffelfinger* court's analysis, considered whether the relevant date for determining whether the statute applies was the date of the injury or the date the plaintiff filed the action, determining that it was the former. The Court then determined that Musgrave's injury, like *Heffelfinger* plaintiff's injury, was the date of the initial incident allegedly giving rise to the chondrolysis, *i.e.*, the November 2003 surgery. Consequently, the Court concluded that Ohio Revised Code § 2315.18 did not apply to this action.

Breg asks for reconsideration of this conclusion. Breg contends that by accepting that Musgrave's injury arose in November 2003, the Court necessarily utilizes two differing and conflicting dates for statute of limitations purposes, thereby creating fundamental inconsistencies regarding the law that applies to this case. That is, the statute of limitations for an Ohio Products Liability Act claim like Plaintiffs' is governed by Ohio Revised Code § 2305.10, which provides a two-year statute of limitations after the cause of action accrues. Musgrave's surgery took place on November 4, 2003, and this action was filed on November 13, 2009. If Musgrave's cause of action accrued on November 4, 2003, as this Court accepted in its summary judgment

decision, then this action would have timely only if it had been filed by November 4, 2005. For Kaid Musgrave's claims to be considered timely when filed in November 2009, the statutory discovery rule of Ohio Revised Code § 2305.10(B)(1) must be utilized to toll the statute of limitations, such that the statute of limitations began to run only at such time that Plaintiffs reasonably discovered the alleged linkage between Musgrave's injury and the pain pump at issue.

Under this approach, Plaintiffs would have to argue that their causes of action accrued only when they were informed "by competent medical authority" that Musgrave's injury was linked to the Breg pain pump "or upon the date on which by the exercise of reasonable diligence the plaintiff should have known that the plaintiff has an injury that is related to the exposure," and that one of these dates was sometime after November 13, 2007 (two years before the complaint was filed). *See* Ohio Rev. Code § 2305.10(B)(1) (providing that a products liability claim in connection with an ethical medical device "accrues upon the date on which the plaintiff is informed by competent medical authority that the plaintiff has an injury that is related to the exposure, or upon the date on which by the exercise of reasonable diligence the plaintiff should have known that the plaintiff has an injury that is related to the exposure, whichever date occurs first.").

Thus, as a general matter under Ohio Revised Code § 2305.10, a plaintiff is entitled, subject to applicable law and requirements and the particular facts of a case, to allege and prove the discovery rule to push a products liability claim past the date of surgery or initial exposure to a medical device to a later date of "discovery" of the alleged connection between the plaintiff's alleged injury and the medical device in question. Under such an approach, a plaintiff's

5

cause of action is only deemed to have accrued as of the date of reasonable discovery of the alleged linkage between the injury and the medical device at issue.

Breg argues that, once Plaintiffs elected to use the accrual analysis of the discovery rule to avoid the bar of the statute of limitations, they should not be heard to simultaneously claim that their request for non-economic damages should be governed under more favorable law that was in effect only before their causes of action accrued. Breg further contends that, a plaintiff who has been given the benefit of the discovery rule to toll the statute of limitations should be constrained by the state of the law—including the statutory law of non-economic damages—that existed at the time his cause of action accrued.

In Plaintiffs' memorandum in opposition, they argue that they are permitted to rely upon two separate dates in this case because a cause of action "arises" before it "accrues," and that it is possible for a products liability claim to "arise" (for damages law purposes) before it "accrues" as a cause of action. For this proposition, Plaintiffs rely federal cases from Washington, D.C., New Hampshire, Massachusetts, California, and the United States Courts of Appeal for the Seventh and Eighth Circuits. Plaintiffs then conclude that the same products liability cause of action can "arise" prior to the April 7, 2005 effective date of the damages cap statute, but "accrue" after that effective date. This Court, however, disagrees.

As Breg correctly explains, under Ohio law, there is no meaningful distinction between a claim "arising" or "accruing." Indeed, those concepts are synonymous, as the Ohio Supreme Court unequivocally stated:

> Pursuant to R.C. 2305.10, the two-year period of limitations begins to run when a cause of action for bodily injury "arose," while the R.C. 2305.11(B)(1) statute of limitations for "medical claims" begins to run when a cause of action "accrued." However, we believe that the terms "arose" and "accrued" are synonymous and that

6

> the rule of discovery long recognized in Ohio as applicable to the "accrual" of causes of action should be applied to the R.C. 2305.10 statute of limitations for claims of hospital negligence in credentialing a physician.

*Browning v. Burt*, 66 Ohio St. 3d 544, 558 (Ohio 1993). Because the Ohio Supreme Court has so held, Plaintiffs' claim in this case that a cause of action "arises" at one time (when an injury is discovered, according to Plaintiffs) but "accrues" at a later time (when a competent medical professional informs the plaintiff of the relation between his or her injury and a medical device), is incorrect as a matter of law. Plaintiffs' causes of action arose and accrued after the effective date the non-economic damages cap of Ohio Revised Code § 2315.18. Thus, that statute was in effect at the time Kaid Musgrave's cause of action under the Ohio Products Liability Act accrued.

As to the Court's reliance upon *Heffelfinger*, that was in error. While at first blush, it appears that *Heffelfinger* was directly on point, it is actually distinguishable in an important way. As Breg has correctly pointed out, *Heffelfinger* did not involve the application of the discovery rule, and the resulting question of whether the damages law that should be applied is the damages statute that existed at the time the cause of action accrued (versus applying the damages law that was in effect at some earlier date prior to discovery and accrual). Instead, in *Heffelfinger*, there was an underlying automobile accident on November 29, 2004 (where the injury was immediate, obvious, and did not need to be "discovered"), while the complaint was filed on November 26, 2006—after the effective date of Ohio Revised Code § 2315.18 amendments. The *Heffelfinger* court held, consistent with what various Ohio state courts had held, that Ohio Revised Code § 2315.18—which was effective for the first time on April 7, 2005—could not be retroactively applied to causes of action that already had accrued or arose

prior to the effective date of that statute. The *Heffelfinger* court never considered the question of what statute or law should apply to a non-economic damages claim that, pursuant to the discovery rule, accrued or arose after the effective date of Ohio Revised Code § 2315.18, which was the question presented here.

Accordingly, the Court finds that to prevent a clear error, it **GRANTS** Breg's Motion for Reconsideration as it relates to application of Ohio Revised Code § 2315.18 to this action.

**B. Document Attributed to Breg**

Breg argues that the Court incorrectly attributed to Breg at 510(k) application that was actually made to the FDA by I-Flow Corporation, a non-party to this action. Plaintiffs agree that the document is properly attributed to I-Flow, but correctly argue that the error was harmless. Breg, however, does not suggest that the error was not harmless, but instead merely asks "that the FDA application attributed to Breg, Inc. on pages 7 and 8 of the Court's summary judgment decision be correctly characterized as a document belonging to a company called I-Flow Corp., and not to defendant Breg, Inc." (ECF No. 165 at 23.) The Court finds Breg's request well taken and **GRANTS** Breg's Motion for Reconsideration in this regard.

### IV. Conclusion

For the reasons set forth above, the Court **GRANTS** Breg, Inc.'s Motion for Reconsideration as to Two Aspects of the Court's September 2, 2011 Summary Judgment Decision. (ECF No. 165.)

**IT IS SO ORDERED.**

                                        **/s/ Gregory L. Frost**
                                        **GREGORY L. FROST**
                                        **UNITED STATES DISTRICT JUDGE**